[Civ. No. 14941.   First Dist., Div. One.   Apr. 8, 1952.]

HOWARD McAULAY et al., Appellants, v. ORVILLE B. JONES et al., Respondents.

Foster & Redhead for Appellants.

Thompson & Thompson, W. H. Orrick and Campbell & McHarry for Respondents.

BRAY, J.—Plaintiffs appeal from a judgment in favor of defendants holding that the term of a certain lease had been extended.

QUESTION PRESENTED

Was the term of the lease extended?

RECORD

Plaintiffs brought an action for declaratory relief to determine primarily if defendant Orville Jones was entitled to remain in the leased premises. Defendant Alfred Williams was alleged to be Jones' manager of the motel on the leased premises. The other defendant is a devisee with plaintiffs of the improvements by reason of the decree of distribution in the estate of Martin McAulay, deceased. Defendant Jones answered and cross-complained, setting up his claim to an extended term of the premises by reason of a certain lease. Defendant Irene McAulay, individually, and Ione Fosmark as trustee for Irene McAulay and Kathleen McAulay, answered, alleging among other things that defendant Jones duly exercised "his option to extend the period of such lease for an additional ten years." The court found that the term had been extended.

FACTS

On November 1, 1939, defendant Jones entered into a lease with plaintiffs and Martin McAulay (since deceased), for the lease of certain real property in Monterey County. Under it, Jones was to clear the ground and build an auto court on it. Lessors were to furnish the material from time to time. Jones was to furnish his labor free of charge. Labor necessary to the operation of the court, other than that of Jones, was to be a charge against income. As rental, lessors were to receive 50 per cent of the net income, the remaining 50 per cent to be retained by Jones. Rental was to be paid every month, submitted with a statement of income and disbursements. This statement was not to be binding until approved, such approval to be made within 15 days after submission. At termination of the lease, Jones was to receive 40 per cent of the appraised value of the auto court. Expense of replacement of improvements was to be a charge against

income. If "the lessee does not elect to exercise the option of renewing said lease as hereinafter provided" he is to deliver premises in reasonably good condition. Plaintiff Howard McAulay was appointed their agent by the lessors. The real property is owned by plaintiffs. The improvements are owned 6/14ths by plaintiffs and 8/14ths by Ione Fosmark as trustee for Irene McAulay and Kathleen McAulay.

The renewal clause which caused this litigation follows: "In the event that the lessee should desire to secure an additional ten years' lease upon the termination of the term herein granted upon the same terms as provided for in this lease, lessee shall notify the lessors in writing during the eighth year of the term of this lease of his desire for an additional ten years' lease. Lessors, upon receiving said written request for an additional ten years' lease, *shall notify lessee in writing within ninety days from the receipt of said request advising the lessee whether or not lessors will accept or reject said request for an additional ten years' lease from the expiration of the term herein granted.*"*

Jones testified, corroborated by his wife and defendant Irene McAulay, and the court found, that on November 7, 1946, he sent Howard a three months' statement of income and disbursements and appended thereto the following statement: "Also under our lease I believe that it is necessary for us to make written request if we wish to re-new our lease for another Ten Year period. Please consider this as my request for a re-newal of our Lease with you and the McAulay Estate and concerning the El Rio Carmelo Motor Court. The terms and wording of the Lease of course to remain the same." Irene McAulay testified that she mailed at the Monterey post office the envelope containing the renewal request, directed to Howard. A check was enclosed which later was received back cancelled. Howard replied to matters in the statement other than the request. Howard denied receiving this part of the statement. Howard produced the statement but it shows that the bottom portion had been torn off. Howard claimed he received it that way. Howard never answered this request for renewal. The court found that the request was made and received by Howard.

Jones had new roofs put on some of the buildings at a cost of $1,332, which he testified he would not have put on the buildings had he thought he was not to be in possession for

---

*All italics added unless otherwise stated.

another 10 years. Howard knew about this and in fact sent the man out who put on the roofs. This cost was paid out of income of the motor court. Jones never consulted Howard about other expenditures hereafter named, but they were apparently listed in the monthly reports. Such other items were a new water heater and a new septic tank, although there is testimony that its replacement was needed in September, 1948. The water heater was not necessary, but was put in as more convenient in capacity. Insurance policies were taken out by Howard in November, 1947, July, 1949, and April, 1949, for three-year periods. He sent the bills to Jones, who paid them, deducting them from income. Howard testified that he considered no expenditures out of the ordinary except the roofs.

The court found that replacement of water heaters, roofs, septic tank, the obtaining of long term insurance, "and portions of other effort and expense" done by Jones were done and incurred in reliance upon the express acknowledgment of Irene (who was then trustee for herself and Kathleen McAulay and as such owner of 8/14ths of the improvements) and upon *his belief that* he had the implied acquiescence of plaintiffs.

### Did the Circumstances Constitute An Acceptance of the Renewal Request?

As there is substantial evidence to support the court's finding that the statement of November 7, 1946, did have attached to it the renewal request and that Howard, the agent for plaintiffs and with whom all the business between Jones and plaintiffs was transacted, received it, we start with the premise that he did. Secondly, it is obvious that the renewal clause does not provide an option to renew in the usual sense. It provides a means by which the lessee may offer to renew and requires the affirmative act of the lessee to make that offer. In the event he does the lessors agree that they, too, will act affirmatively. Within 90 days, they "will accept or reject said request." This agreement they very definitely violated. The situation is different from that in *LaSalle Theatre* v. *Taft*, 156 Ill.App. 356, where the notice which was held to give no right to renew was to be given the landlord "for his consideration." The landlord there had not promised to act on the notice.

The contention of plaintiffs that the requirement that their acceptance be in writing and within 90 days is a *con-

*dition* to the renewal is not well founded. It was merely a *covenant* to act in writing and within the 90 days. A reasonable interpretation of it is, that if no communication as to the offer is given within the time specified, it must be considered that the offer is accepted. "A contract must receive such interpretation as will make it lawful, operative, definite, reasonable . . ." (Civ. Code, § 1643), and ". . . the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." (Civ. Code, § 1654.) Here, the lessors. (The lease was drafted by the lessors' attorneys.) Moreover, "It is generally held that in construing provisions of a lease relating to renewals, if there is any uncertainty, the tenant rather than the landlord is to be favored. (*Streicher* v. *Heimburge,* 205 Cal. 675, 683 [272 P. 290].)" (*Erickson* v. *Boothe,* 79 Cal.App.2d 266, 272 [179 P.2d 611].)

Here there was a duty to speak. For upwards of seven years the parties had dealt with one another. Numerous reports were made by Jones to Howard. The lessors knew that Jones was expending time, money and effort to build up the business, most of which would be lost to him if the lease was not renewed, even though at termination he was to receive 40 per cent of the appraised value. Although the parties were in the relationship of landlord and tenant there was also considerable of a partnership relation included. They shared the expense and the profit. The situation was one which calls for the application of the rule quoted in *Wood* v. *Gunther,* 89 Cal.App.2d 718, 731 [201 P.2d 874] : " 'The rule which must be deemed controlling in this case is well-established. In *Hobbs* v. *Massasoit Whip Co.,* 158 Mass. 194, 33 N.E. 495, Justice Holmes, speaking for the court, pointed out that in certain situations, as where there is a duty to speak, an offer may be accepted by silence and so bind the offeree. In that case the Justice said: "The proposition stands in the general principle that *conduct* which imports acceptance or assent *is* acceptance or assent, in the view of the law, whatever may have been the actual state of mind of the party,—a principle sometimes lost sight of in the cases."

" 'So, in *Laredo Nat. Bank* v. *Gordon,* 61 F.2d 906, it is said: "It is true that, generally speaking, an offeree has a right to make no reply to offers, and hence that his silence is not to be construed as an acceptance. But, where the relation between the parties is such that the offeror is justified in expecting a reply, *or the offeree is under a duty to reply,* the

latter's silence will be regarded as acceptance. Under such circumstances, 'one who keeps silent, knowing that his silence will be misinterpreted, should not be allowed to deny the natural interpretation of his conduct,' etc. Williston on Contracts, sections 91, 91a." ' " (Italics included.) " '. . . in this case she was one of three fiduciary partners in a firm of persons, who had a contract with one another, under which they owed duties, one to the other; and, consequently, silence made the acceptance . . .' " (*Meherin* v. *Meherin,* 93 Cal.App. 2d 459, 466 [209 P.2d 36].)

Our case differs from *Leslie* v. *Brown Brothers Inc.,* 208 Cal. 606 [283 P. 936], where it was held that an offer cannot be turned into an agreement because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken as consent. In that case the offeree had not agreed to reply, as was the case here. Moreover, the relationship of the parties was different, raising there no duty to speak.

Jones as offeror was not, as in cases cited by plaintiffs, and in the reference to 17 Corpus Juris Secundum 376, attempting to impose a condition in his offer that silence would amount to acceptance. That condition was in effect made by plaintiffs in agreeing to reply to the offer.

There was acceptance by conduct. Jones made the expenditures for the water heater, roofs, septic tank and the three-year insurance believing the lease was renewed. The evidence supports the conclusion that while there was leaking in the roofs, Jones would not have done any more than patch those leaks had he not believed his term was extended. Howard sent the roof man to do the work, so that he had full knowledge of the situation both from that fact and later from the receipt of the statement showing the deduction from income of the cost. As to the other expenditures made by Jones on the assumption of a renewal, Howard's knowledge came from the statements showing the fact of such expenditures and their deduction from income. This gave him notice that Jones was changing his position financially, relying upon the notice which he had sent Howard. He must be considered to have known, too, that the fact that Jones would receive 40 per cent of the appraised value at termination would not justify him in making these expenditures if the lease was not renewed.

The 90 days' acceptance period and the right to have the acceptance in writing was a covenant for Jones' benefit and therefore he could waive it. See *Knickerbocker L. Ins. Co.*

v. *Norton* (1877), 96 U.S. 234, 240 [24 L.Ed. 689] : "But a party always has the option to waive a condition or stipulation made in his own favor." "The right to receive written notice of acceptance may be waived by parol." (17 C.J.S. p. 381, § 42.) When the lessors made no reply to his offer of renewal but acquiesced in the improvements which showed the belief of the tenant that the lease had been extended, there was an acceptance by acquiescence. The principle applicable here is recognized in *Pierce Oil Corp.* v. *Gilmer Oil Co.* (Tex.Civ. App.), 230 S.W. 1116, cited by plaintiffs: "Silence does not often constitute assent, but it may, coupled with other circumstances, have some weight in ascertaining the conclusion to be drawn from the other acts of the party charged with having given the assent." (P. 1117.)

■ This acceptance of the benefits estops lessors from claiming they did not accept Jones' offer of renewal. Jones' acts in reliance on the renewal created damage as to him. It is no answer to say that he would not be damaged by a denial of the renewal because he would receive 40 per cent of the appraised value. Fifty per cent of the cost of every expenditure which he did not have to make pursuant to the lease (the evidence shows and the court found that the enumerated expenditures need not and would not have been made had he known there was to be no renewal) was paid for from profits Jones would otherwise receive. Irene McAulay, who as trustee then held 8/14ths interest in the improvements and who mailed the offer of renewal from Jones to Howard, believed that the offer had been accepted. In the summer of 1947 (the year after the letter was sent and about two years before the first term would have expired), a conversation was had between Howard, Irene and Jones. Jones suggested that it was advisable to build some more cottages. Howard did not then suggest that Jones' lease had only two years to go but objected to building more cottages on the ground that the cost of building was too high. It is reasonable to assume that Howard must have known that Jones would not have been interested in building additional cottages for a period of approximately two years only.

The long term fire insurance policies, extending several years beyond the original term of the lease, were taken out by Howard, through his insurance agency, after Jones sent the notice of renewal. The premiums were charged against the income of the business. Thereby 50 per cent of the premiums were paid by Jones by deduction from his share

of the income. The reasonable interpretation of this action of Howard is that he considered the term of the lease to have been renewed.

■ The question of acceptance by silence or acquiescence is a question of fact. Referring to this subject, Williston on Contracts, section 91A, page 283, states: ". . . It is better to deal with each case as one of fact, the question being whether an inference of a promise is fairly warranted by the facts; but it is at least clear as matter of law that silence and total inaction of the defendant may operate as assent to the formation of a contract. Generally taking the benefit of the services will involve some action on his part indicating assent, but a situation is perfectly possible where though he has knowledge of them, he neither speaks nor acts." There is substantial evidence here to support the court's finding on the subject.

### Findings

In plaintiffs' closing brief they state that the court found that the renewal was by "a written 'election of an *option*.'" We fail to locate such a finding. The court did find, among other findings on the subject, that "such Lease was renewed by the Lessee . . . in accordance with the provisions of such Lease . . ." This, of course, is not a finding that Jones had an *option*. Perhaps plaintiffs are referring to the blanket finding that certain paragraphs of the Jones answer and cross-complaint are true. In some of these, it is alleged that defendant gave "written notice of exercise of *option*." ■ If such a finding means that the right to offer to renew was an *option* to renew, it is incorrect. It may be disregarded as there are sufficient other findings to support the judgment. It should be pointed out that in the answer of defendants Irene McAulay individually and Ione Fosmark as trustee for Irene and Kathleen McAulay, it is alleged that pursuant to the provisions of the lease, Jones "by notice in writing duly exercised his *option* to extend the period of such lease . . ."

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.