Peggy Ray Walker KINGSTON,
Appellant,

v.

M. S. McGRATH, Appellee.

No. 14804.

United States Court of Appeals
Ninth Circuit.

April 24, 1956.

Tobriner, Lazarus, Brundage & Neyhart, San Francisco, Cal., D. L. Carter, Weiser, Idaho, for appellant.

J. F. Martin, C. Ben Martin, Boise, Idaho, Donart & Donart, Weiser, Idaho, for appellee.

Before ORR and CHAMBERS, Circuit Judges, and MATHES, District Judge.

MATHES, District Judge.

This appeal is from a judgment of involuntary dismissal, Fed.Rules Civ.Proc., Rule 41(b), 28 U.S.C.A., entered in an action brought by appellant, a California citizen, against appellee and others, citizens of Idaho, to recover damages allegedly resulting from medical malpractice in the diagnosis and treatment of critical neck and back injuries sustained by appellant in an automobile accident near Weiser, Idaho.

Federal jurisdiction was invoked on the ground of diversity of citizenship. 28 U.S.C. § 1332. Since the alleged tortious acts occurred in Idaho, the substantive law of that state governs. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188; cf. Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 108-109, 65 S.Ct. 1464, 89 L.Ed. 2079.

Upon the conclusion of appellant's case-in-chief, in a trial by jury, the District Court granted motions to dismiss and entered judgment in favor of all defendants; but appellant appeals only from the judgment in favor of appellee, the practicing physician and surgeon who was in charge of appellant's case during her hospital confinement.

The motions were made "upon the ground and for the reason that upon the facts and the law plaintiff has shown no right to relief", and were apparently granted under Rule 41(b). Since this was a jury trial, a motion for a directed verdict under Rule 50 would have been the more appropriate procedure; and more especially so by reason of the requirement of Rule 41(b) that where as here the dismissal operates as an adjudication upon the merits, "the court shall make findings as provided in Rule 52 (a)." No findings appear in the record before us [See: Fed.R.Civ.Proc., Rules 41(b), 50 and 52(a), 28 U.S.C.A.; 5 Moore, Federal Practice, p. 1042 (2d ed. 1951).]

The question presented at bar, however, is the same irrespective of which motion led to the judgment of dismissal. Cf. Galloway v. United States, 1943, 319 U.S. 372, 395, 63 S.Ct. 1077, 87 L.Ed. 1458.

Upon appeal from a judgment of dismissal entered upon the close of a plaintiff's case-in-chief, the appellant is entitled to the benefit of every inference which can reasonably be drawn from the evidence viewed in the light most favorable to the claim or cause of action asserted. Gunning v. Cooley, 1930, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Schnee v. Southern Pacific Co., 9 Cir., 1951, 186 F.2d 745, 746; Graham v. Atchison, T. & S. F. Ry. Co., 9 Cir., 1949, 176 F.2d 819, 823; McAlinden v. St. Maries Hospital Ass'n, 1916, 28 Idaho 657, 666, 156 P. 115, 117; Black v. City of Lewiston, 1887, 2 Idaho 276, 281, 13 P. 80, 82.

As said in Wilkerson v. McCarthy, 1949 336 U.S. 53, 57, 69 S.Ct. 413, 415, 93 L.Ed. 497: "It is the established rule that in passing upon whether there is sufficient evidence to submit an issue to the jury we need look only to the evidence and reasonable inferences which tend to support the case * * *."

Viewing the evidence at bar in that light, the following facts were established upon appellant's case-in-chief:

Appellant, a woman in her forties returning to California after a week's vacation in Idaho, was being driven by friends to the airport at Boise, when the automobile in which she was riding went out of control and overturned. Appellant was thrown out and rendered unconscious. She was taken by ambulance to Weiser Memorial Hospital where she was treated by appellee, a regular staff member of the hospital.

Under appellee's direction, a technician employed by the hospital took X-rays of appellant's chest and ribs, and two views of her upper spine as well.

Appellant was then moved to a private room and was in a state of shock for three or four hours following her admission to the hospital.

From the outset appellant complained to appellee of excruciating pain in her neck, radiating up into the back of her head. Suspecting a neck injury, appellee attempted to place her in a neck brace he then had in his office, but appellant was in such pain that she refused to let him apply it.

The only other treatment by appellee which might be considered an attempt to immobilize the neck was the application of ice bags. When appellant later complained to him of her severe neck pains, appellee told her: "Those are bruises and when bruises come to the surface they hurt worse."

It was the practice at the Weiser hospital to send X-ray films to an outside radiologist for analysis and interpretation. The X-rays initially taken at the hospital were sent to the offices of a radiologist in Boise, and the report thereon was received some four or five days later. This report stated that there was a possible fracture of the sixth thoracic or dorsal spine, but was negative as to the neck or cervical spine, and concluded with the caution that spinal abnormalities noted "could easily be congenital but possibility of compression injury is not ruled out."

Although appellant continued to complain of severe pains in her neck and manifested symptoms of a broken neck, no further X-rays were taken of her upper spine and neck until more than three weeks after the negative report on the first X-rays had been received.

The report on these later X-rays revealed that appellant had in fact suffered multiple fractures of the upper spine and neck. After examining this X-ray report, appellee and an orthopedic specialist from Boise, whom appellee had recently called into the case, applied a full body cast which held rigid and immobile appellant's neck, back, and spine.

In addition to the pain suffered during her stay of some six weeks in the Weiser hospital, appellant has been left with a deformed back, and experiences difficulty in rotating her neck. Hence her activities are restricted, and she has never been able to return to her former employment.

Appellant urges that the record thus discloses sufficient evidence to sustain a finding by the jury that appellee was negligent (1) in failing to use the requisite care and skill in diagnosing appellant's injuries; (2) in failing to use the requisite care and skill in the treatment of appellant's known injuries; and (3) in failing to avail himself of timely consultation with an orthopedic specialist.

■ A physician's liability for malpractice under Idaho law turns upon whether he has exercised "the care and skill ordinarily exercised by competent physicians and surgeons in the same or like locality, in the light of present day learning and scientific knowledge of, and professional advancement in the subject." Flock v. J. C. Palumbo Fruit Co., 1941, 63 Idaho 220, 230, 118 P.2d 707, 711; see: Davis v. Potter, 1931, 51 Idaho 81, 87–88, 2 P.2d 318, 320; Swanson v. Wasson, 1927, 45 Idaho 309, 311, 262 P. 147; McAlinden v. St. Maries Hospital Ass'n, supra, 28 Idaho at page 675, 156 P. at page 120.

This same general standard applies in determining whether the physician has failed to exercise due care in the diagnosis of a patient's injuries. See: Bakewell v. Kahle, 1951, 125 Mont. 89, 93, 232 P.2d 127, 129; Giusti v. C. H. Weston Co., 1941, 165 Or. 525, 533–534, 108 P. 2d 1010, 1013; Peddicord v. Leiser, 1940, 5 Wash.2d 190, 199, 105 P.2d 5, 9.

Here the specific charge of malpractice in diagnosis is that appellee was negligent in failing to learn until more than five weeks after her admission to Weiser hospital that appellant had sustained fractures of her neck and upper back; and that this failure was due to appellee's inexcusable delay in taking further X-rays after the first set of X-rays showed no fracture.

■ It is the attending physician's duty to make proper use of all available diagnostic aids, including X-rays. See: Moore v. Tremelling, 9 Cir., 1935, 78 F. 2d 821, 824; Wilson v. Corbin, 1950, 241 Iowa 593, 600, 41 N.W.2d 702, 706; Agnew v. City of Los Angeles, 1950, 97 Cal. App.2d 557, 567, 218 P.2d 66, 73; Reynolds v. Struble, 1933, 128 Cal.App. 716, 725, 18 P.2d 690, 694.

Both appellee and another physician at the Weiser hospital testified that X-rays do not always disclose evidence of fractures, and that in cases where the first X-rays are negative, but symptoms of fracture nevertheless persist, further X-rays should be taken. Thus there was positive expert testimony from appellee himself that further X-rays may reasonably be found necessary in diagnosing injuries, although the original X-rays are negative.

Appellee testified that he was aware of the usual symptoms of a neck fracture, such as severe pain and instability of the head, and appellant testified that she continually complained to him of these very symptoms.

■ So even though the first X-rays of the upper back and neck did not disclose fracture, the jury might reasonably have found nonetheless that because of appellant's continued complaints of severe pain in her neck, "the exercise of ordinary skill and care such as possessed by physicians and surgeons practicing in that community would have required further examination and the taking of further X-ray pictures to determine the true condition of the patient." Reynolds v. Struble, supra, 128 Cal.App. at page 723, 18 P.2d at page 693; see: Kuhn v. Banker, 1938, 133 Ohio St. 304, 310, 13 N.E.2d 242, 245; Stagner v. Files, 1938, 182 Okl. 475, 477, 78 P.2d 418, 421.

Furthermore, the jury might reasonably have found that, had additional X-rays been taken promptly, the full body cast ultimately applied to immobilize appellant's neck, back, and upper spine would have been applied earlier. As to the probable consequences of delay, appellee himself testified that the longer fractures of the spine remain mobile, the greater the resultant damage that should be expected.

In sum, then, considering all the evidence in this record in a light most favorable to appellant, the jury might reasonably have found that appellee was negligent in failing to make proper use of available X-ray facilities as an aid in diagnosing appellant's injuries, and that the resultant delay in treatment of fractures of her neck and spine delayed and impeded appellant's recovery to her substantial damage.

Appellee offered at the trial several explanations as to why he delayed in taking further X-rays, but the jury might not have accorded them credit.

■ As observed in Gunning v. Cooly, supra: "Issues that depend on the credibility of witnesses, and the effect or weight of evidence, are to be decided by the jury. * * * Where uncertainty as to the existence of negligence arises from a conflict in the testimony or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury." 281 U.S. at page 94, 50 S.Ct. at page 233.

What we have thus far concluded requires a new trial. Since a fuller presentation, especially of opinion evidence, may be made upon a new trial, it would serve no useful purpose to consider further on this record the remaining specifications of alleged negligence asserted by appellant.

Reversed and remanded.