[Civ. No. 16595. Second Dist., Div. One. Jan. 19, 1949.]

MARGUERITE WOOD, Individually and as Administratrix, etc., Appellant, v. FRED GUNTHER et al., Respondents.

Michael F. Shannon and Thomas A. Wood for Appellant.

Baker & Kelleher, Fogel & McInerny and Cornelius W. McInerny, Jr., for Respondents.

WHITE, J.—In April of 1938, E. T. Goodman, Eva I. Goodman, his wife as first party; Fred Gunther and Florence Gunther, his wife as second party; and Carleton E. Wood and Marguerite Wood, his wife as third party, entered into a written agreement of partnership for the purpose of reducing

to writing their interests in the business then being operated by them, namely, (1) distributors in the Santa Monica Bay District for the products of the Tidewater Associated Oil Company, and (2) the Santa Monica Auto Camp. This agreement provided among other things, that each of the parties thereto was the owner of an undivided one-third interest in and to each of the enterprises and in and to all of the property owned in connection with the operation of said business, including both real and personal property.

While it would appear from the foregoing that the partnership agreement was entered into by Messrs. Goodman, Gunther and Wood and their three spouses who signed as if they with their three husbands, were partners, a reading of the agreement in its entirety discloses that the wives were not to be partners and had signed merely to divest themselves of certain rights and to be invested with other certain specific rights in the partnership upon the happening of certain contingencies, as will immediately become manifest.

One of the contingencies just alluded to was contained in a provision of the agreement which provided that in the event of the death of any one of the partners, the surviving widow of such partner, if she so desired, had the right to sell to the surviving two partners, the deceased partner's interest in the business, provided that the widow of the deceased partner was legally entitled to receive the one-third interest of her deceased husband. The agreement further provided that the surviving widow could, if she so desired, retain her interest in the partnership.

Carleton E. Wood, one of the partners, died April 10, 1945. No action was thereafter taken by either his widow or the two surviving partners with regard to what should be done with the interest of the deceased partner in the business, and the business continued in operation.

On December 11, 1945, E. T. Goodman, another of the partners, died and the partnership terminated by operation of law.

On January 1, 1946, an agreement entitled "Partnership Agreement" was entered into between Fred Gunther, only survivor of the three original partners, and the respective widows of the two deceased partners, E. T. Goodman and Carleton E. Wood.

This agreement provided that each of the partners should have an equal one-third interest in the new business and recites that it was entered into pursuant to the desire of the partners

"to form a new partnership which will continue the businesses carried on by the old partnership."

The agreement recites that "Fred Gunther and the respective spouses of the other parties for many years were partners in the operation" of the foregoing business, and that the agreement was entered into pursuant to the desire of the parties "to form a new partnership which will continue the businesses carried on by the old partnership." The instrument provided that each of the partners should have an equal one-third interest in the partnership.

Other provisions pertinent to a discussion of the issues presented on this appeal are:

"Should any of the partners desire to sell his interest in the partnership or to withdraw from the partnership, *or to terminate or dissolve the partnership,* he shall do so only upon the following terms:

"(a) Such partner shall give to each of the remaining partners 30 days written notice of such intention and shall, if the remaining partners or partner indicates his willingness to buy within said (30) days, sell to the remaining partner or partners the withdrawing partner's one-third (1/3) interest in the business subject to its liabilities, for an amount equal to the value of the selling partner's interest in the partnership according to standard accounting procedure; market value, not book value, is to be considered. Good will is not to be considered an asset.

"(b) The selling partner agrees to accept payment for his interest in cash to be paid within 90 days from the giving of notice of acceptance by the buying partner or partners.

"(c) Said option to purchase may be exercised by both of the remaining partners in equal proportion or if either of the remaining partners fails to exercise the option to buy and the other so exercises his option to buy, the one so electing shall have the right to purchase the whole of the selling partner's interest in the partnership. The selling partner shall not be required to sell unless the entire partnership interest of the selling partner is purchased.

"(d) Should there be any disagreement by the partners as to the value of the interest of the selling partner, the selling partner shall appoint an arbitrator and the buying partner or partners shall appoint another and if these two arbitrators are unable to agree, the two shall appoint a third and the value of the selling partner's interest fixed by the said arbitrators or any two of them shall determine the purchase

price. All parties agree to be bound by such decision of the arbitrators. . . ." (Emphasis added.)

Pursuant to the provisions of the agreement just set forth, the attorney for plaintiff Marguerite Wood, on July 10, 1946, addressed a letter to Fred Gunther and Eva I. Goodman, reading as follows:

"Mrs. Marguerite Wood has instructed me to notify you that, pursuant to the terms of the Contract of Partnership existing between yourself, Mrs. Goodman and Mrs. Wood, she proposes to terminate this partnership, and this letter is to be taken by you as a thirty days' notice to that effect."·

In reply to this letter, defendant Fred Gunther, on August 6, 1946, addressed a letter to plaintiff Marguerite Wood reading as follows:

"In response to your notice of the 10th day of July, 1946, relating to your desire to terminate the partnership between Fred Gunther, Eva I. Goodman and Marguerite Wood, created by instrument dated Jan. 1st, 1946, I hereby indicate my willingness to buy your one-third interest in the business of said partnership subject to its liabilities or to buy in conjunction with Eva I. Goodman your one-third interest in the business of said partnership subject to its liabilities, for an amount equal to the value of your said interest in the said partnership, according to standard accounting procedure; market value, not book value, is to be considered. Good will is not to be considered an asset.

"In my opinion, the value of your said interest in said partnership, computed as aforesaid, is $45,000.00, which sum I will pay to you in cash within 90 days from the giving of this notice of acceptance should I be the sole purchaser.

"Should I purchase your said interest in conjunction with Eva I. Goodman, I will pay to you in cash within 90 days from the giving of this notice of acceptance one-half of said sum last above mentioned.

"Should there be any disagreement as to the value of your interest, I appoint Charles W. Ashford, whose business address is 1632 Montana Avenue, Santa Monica, California, as an arbitrator to represent me.

"I will make payment to you in cash of the amount found by the arbitrators to be the value of your interest, or I will do so in conjunction with Eva I. Goodman, within the time required in the said partnership agreement.

"This acceptance is intended to conform to the terms of our said partnership agreement and all the terms and conditions

thereof are incorporated in this notice of acceptance, and I will conform to and execute any and all of the provisions of said partnership agreement provided on my part to be performed whether expressly recited in this letter or not.

"Please advise me of your determination in this matter at your early convenience."

On August 9, 1946, defendant Eva I. Goodman addressed a letter to plaintiff Marguerite Wood, acknowledging receipt of the latter's communication of July 10, and advising that she had received a copy of the aforesaid letter of defendant Gunther wherein he expressed "a willingness to buy your one-third interest in the business of said partnership . . . or to buy in conjunction with myself your one-third interest." Mrs. Goodman's letter then continued, "I wish to notify you that I am hereby joining in Mr. Gunther's letter of August 6, 1946, and that it is my desire to purchase your one-third interest in the business of said partnership . . . in conjunction with Mr. Gunther." In other respects, such as conforming with the provisions of the partnership agreement of January 1, 1946, and incorporating by reference the terms of said agreement in this letter, the same was similar to the above mentioned communication written by defendant Gunther.

Thereafter, nothing was done between the parties with regard to the foregoing letter advising of plaintiff Marguerite Wood's proposal to terminate the partnership until October 23, 1946, when defendant Fred Gunther addressed the following letter to plaintiff Mrs. Wood:

"I wish to notify you that I will be ready on the 31st day of October, 1946, at the hour of 10:00 o'clock a. m. at your residence at 15420 Roscoe Boulevard, Van Nuys, California, or at such other place as you may designate within the County of Los Angeles, State of California, to pay to you the sum of $45,000.00 for your one-third interest in the partnership composed of Fred Gunther, Eva I. Goodman, and Marguerite Wood, created by agreement dated January 1st, 1946, in accordance with the terms and provisions of said agreement of January 1st, 1946, your notice thereunder of July 10th, 1946, and my reply dated August 6, 1946.

"I wish to further notify you that in the event that you sell one-half of your interest in said partnership to your partner, Eva I. Goodman, under the terms of said partnership agreement, I will be ready to pay to you the sum of $22,500.00 for one-half of your one-third interest at the time and place above mentioned.

"I shall be pleased to confer with you or your representative prior to October 31st, 1946, in order to make arrangements for payment to you and transfer to me."

On the morning of October 31, 1946, at about the hour of 9:30 o'clock, defendant Gunther telephoned plaintiff Marguerite Wood and requested her to come to his bank so that he might pay her either the sum of $45,000 or $22,500 in conformity with his letter of October 23. Mrs. Wood replied, "No, you promised to come over here." Defendant Gunther then proceeded to Mrs. Wood's home where he arrived about 11:45 a. m. and was met by a representative of plaintiff Wood's attorney who served upon defendant the complaint theretofore filed in the instant action. Upon this occasion defendant Gunther had two certified checks in the total sum of $45,000. He was advised that plaintiff Mrs. Wood was not at home and he thereupon delivered to the representative of her attorney a writing as follows:

"Dear Mrs. Wood:

"I hereby tender you $45,000 for a good title to a one-third interest in Gunther, Wood, and Goodman, or $22,500 for a good title to a one-sixth interest in Gunther, Wood, and Goodman if I purchase in conjunction with Eva I. Goodman."

Plaintiff Mrs. Wood testified that she was at her home at the hour of 10 a. m. on the day in question, waited approximately one-half hour when she departed to keep a previously made appointment.

The complaint filed herein on October 31, 1946, by plaintiff Marguerite Wood was for dissolution of the partnership created by the agreement of January 1, 1946, for an accounting and the appointment of a receiver to take possession of the property and assets of said partnership.

Defendants filed separate answers and also filed cross-complaints. Defendant Fred Gunther's cross-complaint embodied four causes of action, three for specific performance and one for declaratory relief. The cross-complaint filed by defendant Eva I. Goodman prayed for specific performance.

Following trial the court made findings that the interest of Carleton E. Wood in the original partnership formed through the agreement of April, 1938, was the community property of Carleton E. Wood and his surviving widow, defendant Marguerite Wood, plaintiff herein. That there were no unpaid creditors of the estate of Carleton E. Wood, and that the time for filing or presenting claims against said estate expired November 16, 1945. "That it is true that Mar-

guerite Wood (plaintiff herein) was legally entitled to receive the undivided one-third (⅓) of her deceased husband, Carleton E. Wood, in the partnership created by the agreement of April, 1938.'' That all of the assets of said partnership had been transferred to and vested in the partnership created by the agreement of January 1, 1946, between plaintiff Marguerite Wood, defendants Eva I. Goodman and Fred Gunther. That plaintiff did not at any time prior to the filing of the complaint herein, indicate to or advise either defendants Fred Gunther or Eva I. Goodman that the proffered sum of $45,000 for her interest in the partnership was not satisfactory or agreeable to her, or was not the value of her said interest ''subject to its liabilities, according to standard accounting procedure, market value, not book value, to be considered, good will not to be considered as an asset.'' That at no time did plaintiff indicate to either of her partners that she would not accept their offer of $45,000 for her interest ''in order that they might agree upon a single arbitrator to represent them in the manner provided in the agreement of January 1, 1948.'' That plaintiff did not at any time appoint an arbitrator to represent her to fix the value of her interest in the partnership formed through the agreement of January 1, 1946. That the sum of $45,000 ''was and is adequate, fair and just when determined in the manner prescribed in the said partnership agreement of January, 1946.'' That plaintiff ''was obligated to reply to the communications of Fred Gunther of August 6, 1946, and Eva I. Goodman of August 9, 1946, within a reasonable time,'' but did not do so. That her silence constituted an acceptance of the proposal made by defendants Gunther and Goodman. That plaintiff had sold her interest in the partnership for the sum of $45,000.

Judgment was entered that ''Fred Gunther and Eva I. Goodman are the owners of all of the assets of the partnership known as Gunther, Wood and Goodman, established by the agreement dated April, 1938, and by the agreement of January 1, 1946. That defendants and cross-complainants pay to plaintiff and cross-defendant the sum of $45,000.00.''

Plaintiff and cross-defendant prosecutes this appeal from such judgment.

Appellant first contends that the cross-complaints filed herein by respondents Fred Gunther and Eva I. Goodman do not state facts sufficient to constitute a cause of action.

This claim is grounded on the contention that ''the so-called partnership of January 1, 1946, did not acquire title to any

of the assets that were owned by the partnership operated by E. T. Goodman, Fred Gunther and Carleton Wood under the agreement dated April, 1938.''

As we view appellant's contention it is that upon the death of her husband, the partnership of which he was a member, established by the agreement of April, 1938, was *ipso facto*, terminated by his demise, that his interest vested in the surviving partners, subject to their duty to liquidate the business, account to the administratrix of his estate and pay over to such administratrix one-third of the amount remaining after liquidation. Appellant argues that such was the understanding of the parties to the partnership agreement of January 1, 1946, is evidenced by the provisions therein contained, such as ''This conveyance and agreement to convey the assets of the former partnership is made subject to probate administration'' in the matter of the estates of the two deceased partners. That the agreement of January 1, 1946, also contained the provision for continuation of the original partnership created by the agreement of April, 1938, ''subject, however, to any accounting that may be required in the said estates.'' That the provision in the agreement of January 1, 1946, that the surviving partner should not be obligated to liquidate the original partnership but shall continue to operate the same indicates that the parties did not intend a present conveyance of anything owned by the original partnership to the partnership created by the contract of January 1, 1946. In other words, appellant urges that the partnership established by the agreement of January 1, 1946, was not to receive anything by way of assets until the following *conditions precedent* set forth in said agreement were complied with:

1. The completion of the probate administration of the two estates;

2. The securing during the probate administration of the two estates, of orders of court permitting the transfer from one partnership to the other by the two surviving widows if the court had jurisdiction to make such order;

3. The ability of the two widows, upon the completion of the probate administration of their respective husbands' estates, to make such a transfer as would vest title in the partnership attempted to be created by the contract of January 1, 1946;

4. That since there was no allegation in the cross-complaints that the foregoing ''conditions precedent'' had been complied with, the pleadings did not state a cause of action.

■ It is well settled that partners may agree in their contract of copartnership or by subsequent agreement that the firm shall not be dissolved by the death of a partner; that the interest of the deceased partner may be purchased by the surviving partners for a stated sum, or for an amount arrived at by a process or formula, or that the investment of the deceased partner in the firm shall continue. Under any of such situations the Uniform Partnership Law does *not* control the liquidation of a partnership (Uniform Partnership Act, § 42 [Civ. Code, § 2436]; *Gibboney* v. *Derrick,* 338 Pa. 317 [12 A.2d 111]; *In re Eddy's Estate,* 175 Misc. 1011 [26 N.Y.S.2d 115]. *Cf. Rankin* v. *Newman,* 114 Cal. 635 [46 P. 742, 34 L.R.A. 265]; *Stilgenbaur* v. *U. S.,* 115 F.2d 283; *Keyes* v. *Hurlbert,* 43 Cal.App.2d 497 [111 P.2d 447]; *Lanier* v. *Bowdoin,* 282 N.Y. 32 [24 N.E.2d 732]).

As heretofore noted, the wives of the original partners were parties to the original partnership agreement of April, 1938, not as partners, but for the purpose of surrendering certain rights and to be invested with other specific rights, dependent upon the happening of certain contingencies. One of such contingencies was the death of a partner, upon the occurrence of which the original agreement provided that his surviving spouse, if she then was ''legally entitled to his one-third interest in the partnership,'' could elect, (1) to sell the interest to the surviving partners in an amount to be ascertained by arbitrators as set forth in the agreement, or, (2) to continue the investment of her deceased spouse in the partnership.

In the case at bar the court found on substantial evidence that there were no creditors of the estate of the deceased partner Carleton E. Wood; that he died intestate; that the unpaid costs of administration are less than the sum received from the sale by the administratrix of certain personal property of the estate; that the deceased partner Wood left surviving his widow, appellant herein, and two children.

■ As was said by the trial judge in his memorandum ruling when the cause was before him, ''Under the law of this state it is presumed that the husband's interest in property acquired after marriage is community property. His interest in the partnership was acquired after marriage and the presumption that it was acquired with community funds has not been rebutted by evidence. ■ While the interest of a partner in a partnership is not, as such, community property, yet as between the surviving spouse, the heirs at law, the adminis-

tratrix and the individual creditors of the deceased partner's estate, it is governed by community property rules. (9 Cal.L. Rev. p. 221, note 109.) Moreover, it appears that the widow filed with the state a claim that the partnership interest was community property and the state inheritance tax has been assessed on that basis.

"Accordingly, it follows that the widow was in the language of the original partnership agreement, 'legally entitled to receive the undivided one-third interest' therein of her deceased husband. Being thus entitled, she was by the contract of partnership entitled to defer the liquidation of the partnership. Her right by that contract was superior to the rights of the administratrix, the heirs at law, and the individual creditors of the decedent.''

The original agreement of copartnership entitled appellant to continue the investment of her husband in the firm, which she chose to do. By the partnership agreement of January 1, 1946, the manifest intention of the parties was that appellant would convey whatever rights she had, whether as stated by the trial court, "it was a chose in action, or a specific interest in the partnership property." It seems manifest that the use of the term "subject to probate administration" had but a single purpose, and that was to recognize the claim which the estate of the deceased partner Carleton E. Wood might have against the assets of the partnership for the expenses of administration, taxes, creditors' claims or other expenses. There was accordingly inserted in the agreement a provision that appellant would hold the new partnership harmless as against any such claims that might be asserted.

Appellant, in her capacity as administratrix of the estate of her deceased husband, is a party to this action. As such, she makes no claim that the assets of the partnership are needed to satisfy any claims in the estate. The court found on ample evidence that no such claims by the estate existed, and that appellant as the surviving spouse of one of the original partners, was "legally entitled to his one-third interest in the partnership." The agreement of January 1, 1946, was therefore valid and not subject to the infirmities applied thereto by appellant.

It is next asserted by appellant that the cross-complaints fail to state a cause of action for the further reason that there had never been an acceptance of the offer made by appellant to respondents, that on the contrary, there was a rejection thereof and a counterproposal which was not accepted. Also,

that it was error to hold that appellant Wood was obligated to reply to the letters of respondents under date of August 6, 1946 and August 9, 1946, and that her failure to reply constituted an acceptance of the counterproposal made by respondents Gunther and Goodman.

 Mindful of the rule that ordinarily an acceptance of an offer must be absolute and unqualified, but also remembering that under certain circumstances, acceptance of a counteroffer can be inferred from conduct on the offeree's part indicative thereof, we are persuaded that the last two mentioned contentions of appellant were correctly decided against her by the learned trial judge in his memorandum ruling rendered at the conclusion of the trial. We therefore adopt the same as part of this opinion. It is as follows:

"The July 10 notice signed by plaintiff's agent reads as follows: 'Mrs. Marguerite Wood has instructed me to notify you that, pursuant to the terms of the Contract of Partnership existing between yourself, Mrs. Goodman and Mrs. Wood, she proposes to terminate this partnership, and this letter is to be taken by you as a thirty-days notice to that effect.'

"As will be observed, the proposal is not to *sell* her interest but a proposal *to terminate* the partnership. However, by the express terms of the contract a proposal to terminate instantly gave rise to a right on the part of the remaining partners to purchase plaintiff's interest and thereby avoid a liquidation of the partnership. In short, the notice by the plaintiff was not an offer to sell her interest in the partnership pursuant to the formula therein laid down, but a notice to terminate the partnership. To avoid the effect of that notice, the remaining partners were required to make an offer to the plaintiff within the terms of the partnership agreement. Such an offer was made by the partner Gunther on August 6, 1946, and concurred in by the partner Goodman on August 7. The offer was to pay $45,000 for plaintiff's interest, or in the alternative, to value her interest according to the formula set forth in the partnership agreement, as she might elect. The offer advised plaintiff that as provided by the agreement the buyer had named as his arbitrator one Ashford. The offer requested, in effect, that plaintiff advise the offeror as to whether she would elect to take $45,000 without arbitration or whether she wished arbitration. It was then the duty of the plaintiff, as will presently be shown, to accept the proposed $45,000 or to make a counterproposal, or to demand that the matter proceed to arbitration. She did not do so. When she

later received from Mr. Gunther the letter dated October 24, 1946, in which he stated that he would be at her home at 10 o'clock a. m on October 31st to pay her $45,000, or at any other place which she might designate, she was definitely advised that Mr. Gunther was proceeding on the assumption that she did not disagree with his offer of $45,000; and that she had no counteroffer to make and that she did not expect to designate an arbitrator so as to follow the provisions of the contract. Again, to that letter she made no response. Inasmuch as she did not do so, Mr. Gunther was entitled to assume that she was satisfied with the offer of $45,000. When, then, on the morning of October 31st he telephoned her, stating he was ready to pay the $45,000, and asked if she would meet him at his bank rather than at her home, her answer was that his letter had designated her home. To be sure, her answer did not say whether she accepted or rejected his proposal, but she knew he proposed to pay her $45,000 on that morning and she agreed he might proceed to her home. She was then under a duty to accept or reject his offer, and by her silence, under the circumstances, she bound herself to take $45,000. Upon arriving at her home he was met by plaintiff's attorney and a process server who immediately served a copy of the summons and complaint in the within action. At no time up to that moment had plaintiff given any indication that $45,000 was or was not acceptable for the one-third interest. On .the contrary, then, and for some time previously, she had regarded the new partnership agreement as not binding upon her, but this view she never disclosed to the defendants' Gunther or Goodman until the complaint in this case was served· upon them.

"The law does not permit one to play fast and loose in situations where one owes a duty to another. This is not the case of a stranger offering to buy her interest, whatever it may have been in the partnership, for $45,000. To such a person she would owe no duty to speak at all, but in this case she was one of three fiduciary partners in a firm of persons, who had a contract with one another, under which they owed duties, one to the other; and, consequently, silence made the acceptance. Whether the acceptance arose within a reasonable time after August 6th, or within a reasonable time after October 24th, it clearly did arise at the conclusion of the telephone conversation on October 31, 1946. If, by chance, arbitrators might have set a higher figure than $45,000 on her interest, the

plaintiff cannot complain because she alone was the person at fault.

"The rule which must be deemed controlling in this case is well-established. In *Hobbs* v. *Massasoit Whip Co.*, 158 Mass. 194, 33 N.E. 495, Justice Holmes, speaking for the court, pointed out that in certain situations, as where there is a duty to speak, an offer may be accepted by silence and so bind the offeree. In that case the Justice said: 'The proposition stands on the general principle that *conduct* which imports acceptance or assent *is* acceptance or assent, in the view of the law, whatever may have been the actual state of mind of the party,—a principle sometimes lost sight of in the cases.'

"So, in *Laredo Nat. Bank* v. *Gordon*, 61 F.2d 906, it is said: 'It is true that, generally speaking, an offeree has a right to make no reply to offers, and hence that his silence is not to be construed as an acceptance. But, where the relation between the parties is such that the offeror is justified in expecting a reply, *or the offeree is under a duty to reply*, the latter's silence will be regarded as acceptance. Under such circumstances, "one who keeps silent, knowing that his silence will be misinterpreted, should not be allowed to deny the natural interpretation of his conduct," etc. Williston on Contracts, sections 91, 91a.'

"The evidence along with the proper inferences therefrom makes it clear that plaintiff, in July, 1946, wished to terminate the partnership, but that she did not wish to sell her interest as it might be valued by arbitrators restricted, as they would be, to following the valuation provided by the formula. By her silence she unquestionably hoped to accomplish her aim by the challenges which she now makes. But she has misconstrued her rights under the law. She is now limited to receiving $45,000." (Emphasis included.)

For the foregoing reasons, the judgment is affirmed.

Doran, Acting P. J., concurred.

A petition for a rehearing was denied February 14, 1949, and appellant's petition for a hearing by the Supreme Court was denied March 17, 1949. Carter, J., voted for a hearing.