LISETTE COOPER *vs.* ERIC KETO.

No. 12-P-770.

Middlesex. April 2, 2013. - June 26, 2013.

Present: KANTROWITZ, BROWN, & KAFKER, JJ.

*Divorce and Separation,* Separation agreement, Foreign judgment, Attorney's
   fees. *Uniform Interstate Family Support Act. Probate Court,* Divorce,
   Findings by judge, Attorney's fees. *Practice, Civil,* Contempt, Findings by
   judge, Attorney's fees. *Contract,* Separation agreement, Offer and
   acceptance. *Parent and Child. Contempt.*

This court concluded that the standard of civil contempt under Massachusetts
   law, i.e., clear and convincing evidence, rather than the standard of proof
   beyond a reasonable doubt under California law, applied to a California
   divorce judgment into which a marital separation agreement had been
   incorporated and which had been registered in Massachusetts pursuant to
   the Uniform Interstate Family Support Act, G. L. c. 209D, where the issue
   had been waived by the defendant. [803-804]
In a civil action brought to enforce a provision of a marital separation agree-
   ment incorporated into a California divorce judgment requiring the parties
   to share equally all agreed-upon educational expenses of their child, the
   defendant father's silent acquiescence was sufficient to constitute his
   agreement to the child's choice of a college and its associated expenses;
   however, the father's agreement by acquiescence was not sufficient to sup-
   port the probate judge's finding of contempt, where the college expenses
   provision was not sufficiently clear and unequivocal; further, although the
   judge's findings were well supported regarding most of the expenses
   required by the provision, remand was required regarding certain other
   expenses to determine whether they were covered by the provision;
   moreover, the judge's award of attorney's fees was supported by his find-
   ings; finally, the defendant's contentions regarding certain other issues
   lacked merit. [804-810] BROWN, J., concurring.


REGISTRATION for enforcement of a foreign order of support in
the Middlesex Division of the Probate and Family Court Depart-
ment on October 22, 2010.

A complaint for contempt was heard by *Peter C. DiGangi,* J.

*Theresa K. Capobianco* for the defendant.

*John Foskett* for the plaintiff.

KAFKER, J. The central issue in this case is the correct interpretation of the college expenses provision of a marital separation agreement (agreement) incorporated into a California divorce judgment. We must also resolve choice of law issues, as the California divorce judgment was registered in Massachusetts pursuant to G. L. c. 209D, § 6-601. The defendant, Eric Keto (father), contends that he is not obligated to pay his share of the college expenses because they were not "agreed upon" as provided in the judgment. The plaintiff, Lisette Cooper (mother), contends that the father was properly held in contempt because the father was well aware of the child's college plans, and the father's current wife, a teacher at the child's college preparatory school (prep school), assisted in the child's college application process by writing a letter of recommendation in support of his successful early decision application. We conclude that the father is contractually bound by California law to pay his share of the college expenses, as his silence throughout the college application and admission process signifies his acceptance or acquiescence in these circumstances. However, the judgment was nonetheless not sufficiently clear and unequivocal to hold him in contempt under Massachusetts law.

*Background.* 1. *The marital separation agreement.* After a two-day evidentiary hearing, a judge of the Probate and Family Court found that the mother and the father were divorced in California pursuant to a judgment of divorce dated September 6, 1995. The parties had one child, a son born in 1990. The judgment incorporated an agreement that included a section entitled "college expenses," which provides:

"At such time as [the child] becomes a full time student at a post-secondary institution, making normal progress towards an undergraduate degree, his educational expenses shall first be paid from funds, held in [the child's] name and/or for his benefit and intended to cover such expenses. If these funds are insufficient to pay such expenses, each party shall pay one-half of all agreed-upon educational expenses not otherwise covered. Expenses to be shared, subject to such agreement, shall include tuition, fees, room, board, books, necessary equipment, medical insurance, uncovered medical and dental expenses, transportation to

and from school, other transportation, clothing and living allowance."

Another section of the agreement provides:

"The parties have previously established a Uniform Transfer to Minor's [*sic*] account for the benefit of [the child's] post-secondary education, unless the parties otherwise agree. At the present time the account is . . . held in the name of [the mother] as custodian. The parties agree that [the mother] shall continue to act as custodian and shall provide [the father] with quarterly reports to said account or any successor account. Said reports shall be provided to [the father] within 30 days of receipt of same by [the mother]."

The agreement further provides that it is to "be governed by and construed in accordance with the laws of the state of California."

2. *Postdivorce findings and proceedings.* In 1996, the mother and father each moved to Massachusetts, where they both obtained employment. From the date of the divorce until October, 2002, the mother and father shared physical custody of the child, but starting in October, 2002, he resided primarily with the mother. The mother has never sought or received child support from the father. The child has always attended private schools, with the father at one point objecting to the mother's attempt to have the child attend public school in Weston. Beginning in the seventh grade, the child attended an exclusive private prep school.

At prep school, the child took five years of Chinese language courses taught by the father's current wife (the child's stepmother). The child spent his junior year abroad in China, which the father knew about and supported. During the child's senior year, he participated in an independent study course taught by the stepmother. As previously noted, the stepmother wrote a letter of recommendation on the child's behalf for his early decision application to Bard College (Bard), where he was accepted for admission.[1] The father claimed the marital disqualification

---

[1]Bard was the only college to which the child applied.

when asked whether he spoke with his current wife about the child's decision to attend Bard.

The father admitted to attending some parent-teacher meetings at the prep school, receiving report cards and other notices from the school, and attending the child's graduation in the spring of 2008. The prep school has a "strict college application process" that students must follow. The judge found that the father "admitted that no one prevented him from participating in [the child's] college application process." The father also never objected to the child's decision to apply to, accept, or attend Bard. Indeed, at trial he testified that he had no objection to Bard. The father did state that he felt that the mother and the child were not interested in his opinion about the child's college application process, and he therefore did not meet with the child's prep school college counsellor.[2] The father, the judge further found, never suggested that the child apply to a public college. The father holds an undergraduate degree from Princeton University[3] and a graduate degree from Harvard University.

3. *The UTMA account.* Pursuant to the terms of the agreement, the mother exercised control of the Uniform Transfers to Minors Act (UTMA) account. The balance in the account at the time of divorce was between $20,000 and $50,000. The mother requested that duplicate statements relating to the UTMA account be sent to the father, at least when the account was managed by Merrill Lynch. In 2002, she moved the account to Charles Schwab, and thereafter to Fidelity Investments. The value of the account grew to $74,400 as of May, 2008. In June, 2008, she withdrew funds from the UTMA account to pay the deposit for the child to attend Bard. By July, 2009, the account was fully expended. The father never asked the mother for copies of the UTMA account statements prior to July, 2009.

4. *Request for reimbursement of college expenses.* On July 23, 2009, the mother mailed the father a letter seeking reimbursement for one-half of the $4,816.10 educational expenses that she had incurred on the child's behalf after exhausting the

---

[2]However, the mother testified that either the father or the stepmother had attended a meeting with the college counsellor.

[3]The judge incorrectly found that the father's undergraduate degree was from Yale. The father testified otherwise.

UTMA account. The father did not respond to the request. In October, 2009, the mother's counsel followed up on the request by sending the father another letter. On October 30, 2009, the father's counsel sent the mother's counsel a letter requesting documentation to prove that the child was attending college and making normal progress, and demanding an accounting of how the money in the UTMA account had been spent. The letter did not object to or otherwise mention the child's choice of Bard. On January 22, 2010, the mother's counsel sent the father's counsel a letter enclosing account statements and documentation for the payments made by the mother to Bard. The father's counsel followed up with a request for the child's college transcript, which was provided. As demonstrated by the transcript, the child was a double major in East Asian studies and photography and maintained a 3.5 grade-point average. He also worked part-time in a restaurant and as a tutor to defray expenses.

5. *Litigation.* On October 22, 2010, the mother registered the California judgment of divorce in the Commonwealth pursuant to G. L. c. 209D, § 6-602. She also filed a complaint for contempt. The father's answer and counterclaim, filed on November 10, 2010, states that the parties had not agreed on educational expenses because the mother had never consulted with the father about what college the child would attend. A two-day evidentiary hearing ensued. The Probate and Family Court judge found the father in contempt, concluding that he had violated a clear and unequivocal order and that he had the ability to pay. Both parties reported assets valued at over $5 million with "substantial liquid assets." The judge ordered the father to pay one-half of the total of $182,412.57 paid by the mother on the child's behalf, which included Bard tuition, room and board, and fees of $104,212; rent payments of $23,050;[4] transportation and other living expenses of $31,648.32 ($21,448.32 in American Express charges plus $10,200 in cash allowances); health and dental insurance premiums of $21,736.58; and uninsured medical and dental expenses of $1,765.67. The judge also ordered the father to pay the mother $90,263.25 in attorney's fees.

---

[4]The child moved from college housing to less expensive off-campus rental housing in his sophomore and junior years.

*Discussion.* 1. *Choice of law.* The choice of law provision in the agreement states that the agreement is governed by and to be construed in accordance with California law. Furthermore, the enforcement of the judgment in this context is governed by the Uniform Interstate Family Support Act (UIFSA), enacted in Massachusetts as G. L. c. 209D.[5] The relevant section of the UIFSA provides: "The law of the issuing state governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages under the order." G. L. c. 209D, § 6-604(*a*), inserted by St. 1995, c. 5, § 87. The issuing State in this context is California. See G. L. c. 209D, § 1-101(9). Thus it is clear, and there is no argument to the contrary, that we apply California law when interpreting the substantive provisions of the agreement incorporated into the divorce judgment. The substance of the agreement determines the "extent, amount, and duration" of the father's obligations under the judgment.

There is, however, a dispute whether we apply Massachusetts or California contempt standards to a registered support order. The father contends that California law applies and that California requires proof beyond a reasonable doubt to establish contempt.[6] See *In re Witherspoon,* 162 Cal. App. 3d 1000, 1001-1002 (1984). Cf. *Mitchell* v. *Superior Court,* 49 Cal. 3d 1230, 1240-1241, 1256 (1989). However, it appears that he makes this argument for the first time on appeal, and it is therefore waived. See, e.g., *Worcester* v. *AME Realty Corp.,* 77 Mass. App. Ct. 64, 68 (2010), and cases cited. We have not located in the record any argument to the probate judge that California law supplies the contempt standard or that the reasonable doubt standard of proof applies. On the contrary, the father's counsel argued both orally and in writing based on the burden of clear and convincing evidence. Indeed, his proposed rationale and conclusions of law stated: "Massachusetts . . . law establishes the standards for proving civil contempt." He cannot argue to the

---

[5]The parties do not dispute that the divorce judgment constitutes a "support order" as defined in G. L. c. 209D, § 1-101(21).

[6]We express no opinion whether the father's interpretation of California law on this point is correct.

contrary now.[7] We therefore conclude that Massachusetts con-
tempt standards and procedures apply to the enforcement of the
agreement.

To find a civil contempt, "there must be a clear and undoubted
disobedience of a clear and unequivocal command. . . . Where
the order is ambiguous or the disobedience is doubtful, there
cannot be a finding of contempt." *Birchall, petitioner*, 454
Mass. 837, 851-852 (2009) (quotations and citations omitted).
See *Poras* v. *Pauling*, 70 Mass. App. Ct. 535, 539-540 (2007);
*Pedersen* v. *Klare*, 74 Mass. App. Ct. 692, 697 (2009); *Wooters*
v. *Wooters*, 74 Mass. App. Ct. 839, 843 (2009). The defendant
must have the ability to comply with the order. See *Birchall,
petitioner, supra*; *Poras* v. *Pauling, supra* at 540. The complain-
ant must also establish the contempt by clear and convincing
evidence. *Birchall, petitioner, supra* at 852.

2. *The agreement.* The first part of the college expenses sec-
tion of the agreement provides: "At such time as [the child]
becomes a full time student at a post-secondary institution, mak-
ing normal progress towards an undergraduate degree, his
educational expenses shall first be paid from funds, held in [the
child's] name and/or for his benefit and intended to cover such
expenses." The judge properly found that the child was a full-
time student at Bard making satisfactory progress towards his
degree, and that his education expenses were first paid by funds
in the account held in his name.

---

[7]Moreover, if we were to consider this question on the merits, it appears
that UIFSA requires the application of Massachusetts law. In this context,
UIFSA states: "A registered order issued in another state is enforceable in the
same manner and is subject to the same procedures as an order issued by a
tribunal of the [C]ommonwealth." G. L. c. 209D, § 6-603(*b*), inserted by St.
1995, c. 5, § 87. The contempt proceeding here was instituted to enforce the
registered order containing the agreement. The official comments to UIFSA,
which provide "insight into the legislative intent of G. L. c. 209D," *Freddo* v.
*Freddo, ante* 353, 358 (2013), likewise emphasize that the forum State's
"rules of evidence and procedure apply to hearings, except as local law is
supplemented or specifically superseded by [UIFSA]." Comment to UIFSA
(1996) § 603, 9 (Part IB) U.L.A. 508 (Master ed. 2005). This is consistent
with the "key principle of UIFSA" that "forum law be applied to support
cases whenever possible." Comment to UIFSA (1996) § 303, *id.* at 361. The
father has not identified, and we have not found, any provision in UIFSA
indicating that we should not apply our own law to determine whether he is in
contempt.

We therefore turn to the key contested provisions of the agreement. They provide: "If these funds are insufficient to pay such expenses, each party shall pay one-half of all *agreed upon* educational expenses not otherwise covered. Expenses to be shared, subject to such agreement, shall include tuition, fees, room, board, books, necessary equipment, medical insurance, uncovered medical and dental expenses, transportation to and from school, other transportation, clothing and living allowance." (Emphasis supplied.) The father contends that he did not agree to the educational expenses, and therefore he cannot be held responsible for their payment or held in contempt.

The judge's findings on this point require careful consideration. It is undisputed that the parties did not speak to each other about the selection of Bard and the associated expenses. According to their own testimony, they were barely on speaking terms. The judge also did not expressly find that the requested expenses had been "agreed upon." Rather, the judge made a constellation of findings demonstrating the father's awareness of, and acquiescence in, the child's choice of Bard, and the critical assistance of the stepmother, who nurtured the child's developing interest in East Asian studies and wrote a letter of recommendation as part of the child's only college application. The findings establish that the father never objected at any stage of the application or admission process, nor did he object during the first year that the child attended Bard. Finally, the father historically had supported the choice of private schools both for himself and for the child, and had the financial wherewithal (over $5 million) to pay for private college education. Compare *Mandel* v. *Mandel*, 74 Mass. App. Ct. 348, 353 (2009) (father earning approximately $100,000 per year claimed that he and the child's mother "both attended public universities and never intended the college expense provisions to require payment of private university expenses"). The question is whether the father's awareness, acquiescence, and ability to pay, along with his current wife's active assistance in the college application process, was sufficient to constitute his agreement to the child's choice of Bard and its associated expenses.

The meaning of "agreed-upon educational expenses" is a question of law for this court. See *Ben-Zvi* v. *Edmar Co.*, 40

Cal. App. 4th 468, 472 (1995). Neither party has provided this court with any California case law specifically directed at the enforcement of education expense provisions. Rather, the parties direct us to general California contract law principles and the reasoning of this court in *Mandel* v. *Mandel, supra,* which involved the interpretation of a college expense provision under Massachusetts law.[8]

Under California law, "[i]t has been held that where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent, . . . and the conduct of an offeree may constitute acceptance." *Beatty Safway Scaffold, Inc.* v. *Skrable,* 180 Cal. App. 2d 650, 655 (1960). Similarly, "estoppel may arise from silence where there is a duty to speak." *Skulnick* v. *Roberts Express, Inc.,* 2 Cal. App. 4th 884, 891 (1992). See *Feduniak* v. *California Coastal Comm.,* 148 Cal. App. 4th 1346, 1362 (2007). Cf. *Mandel* v. *Mandel,* 74 Mass. App. Ct. at 355 ("a party who has sat on his or her right to intervene, or to seek approval from the court when the parties disagree, until the college selection process has been completed, may have waived his or her right to object to the college and its concomitant cost"). The principle that a party may be bound by silence "stands on the general principle that conduct which imports acceptance or assent is acceptance or assent, in the view of the law." *Wood* v. *Gunther,* 89 Cal. App. 2d 718, 731 (1949), quoting from *Hobbs* v. *Massasoit Whip Co.,* 158 Mass. 194, 197 (1893) (Holmes, J.).

In *Wood* v. *Gunther,* the parties were members of a partnership and consequently owed each other contractual and fiduciary duties. 89 Cal. App. 2d at 730. A defendant offered to buy out the plaintiff's interest under a provision in the partnership agreement, and the court held that the plaintiff, by remaining silent, had accepted the offer. *Ibid.* If the defendant had been a stranger to her, the plaintiff could have ignored the offer, but the prior relationship between them meant that she was bound by her apparent acquiescence. See *ibid.* Thus, the California Supreme

---

[8]The court in *Mandel* also noted other jurisdictions' decisions involving contested college expense provisions. 74 Mass. App. Ct. at 353 n.7, 354 nn.8, 9.

Court has held, "[s]ilence in the face of an offer is not an acceptance, *unless there is a relationship between the parties* or a previous course of dealing pursuant to which silence would be understood as acceptance" (emphasis supplied). *Southern Cal. Acoustics Co.* v. *C.V. Holder, Inc.*, 71 Cal. 2d 719, 722 (1969). See *C9 Ventures* v. *SVC-West, LP*, 202 Cal. App. 4th 1483, 1500 (2012). Cf. *Blickman Turkus, L.P.* v. *MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 867 (2008) ("A duty to speak . . . may arise as an incident of a relationship between the defendant and the plaintiff").

The judge found that the father failed to inquire concerning the child's college plans despite the stepmother's involvement. Although the parties' relationship was strained, they both had continuing, long-term obligations as the child's parents and under the agreement. See *Storek & Storek, Inc.* v. *Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 55 (2002) (implied covenant of good faith and fair dealing in performance of contracts). Cf. *Marriage of Bonds*, 24 Cal. 4th 1, 27 (2000), citing Cal. Family Code § 721(b) (fiduciary duty between husband and wife). Whether the father had a duty to object or be bound is an issue of fact under California law. See *Beatty Safeway Scaffold, Inc.* v. *Skrable*, 180 Cal. App. 2d at 655. The judge's determination that the father was bound is not clearly erroneous. See *Cummings* v. *Lamoureux*, 81 Mass. App. Ct. 506, 508 n.6 (2012). In these circumstances, the father could not just sit silently as the college application and admission process moved expeditiously forward with the assistance of his current wife. Once the child began to attend Bard and expend money from the fund, the father's silence was even more definitive and conclusive.

3. *Contempt.* Although contractually binding in these circumstances, the father's silent acquiescence to the child's selection of Bard is not sufficient to support a finding of contempt. See *Wooters* v. *Wooters*, 74 Mass. App. Ct. at 844 (upholding contractual obligation in alimony action but rejecting finding of contempt). The college expense provision here is not sufficiently clear and unequivocal in this regard. *Tatar* v. *Schuker*, 70 Mass. App. Ct. 436, 437 (2007) (upholding husband's continuing child support obligation for college-age student but concluding father could not be held in contempt because order was "not

sufficiently clear on this point"). Neither party reached out to the other as the college expense provision clearly contemplated. See *Mandel* v. *Mandel*, 74 Mass. App. Ct. at 352 ("The college expense provisions [of the settlement agreement] thus contemplate an interactive process regarding the selection of each child's college"). An express agreement on college expenses was not reached, and was at least arguably required by the use of the terms "agreed-upon." See *Ben-Zvi* v. *Edmar Co.*, 40 Cal. App. 4th at 473 ("Where the parties have reduced their agreement to writing, their mutual intention is to be determined, whenever possible, from the language of the writing alone"). The agreement was therefore equivocal enough to preclude a contempt finding, even when the father should have known that the agreement expected and required more from him than silence if he was not going to support his son's well-defined college plans. See *Tatar* v. *Schuker*, *supra*; *Wooters* v. *Wooters*, *supra*.

4. *Amount of expenses*. Most of the expenses ordered by the judge are readily identified and required by the agreement. Once the father agreed to the child's choice of Bard, the subsidiary expenses associated with that decision were expressly defined and mandated by the college expenses provision itself: "Expenses to be shared, subject to such agreement, *shall include* tuition, fees, room, board, books, necessary equipment, medical insurance, uncovered medical and dental expenses, transportation to and from school, other transportation, clothing and living allowance" (emphasis supplied). The judge's findings, with the exception of "other transportation, clothing and living allowance," are well supported. The father's miscellaneous evidentiary objections to the admission of various bills and charges are also immaterial, as the mother's testimony alone properly supported these findings.

Further inquiry and a remand are required, however, regarding expenses related to the child's "other transportation" and clothing and living allowance. The credit card bills relied on by the mother are not sufficient in and of themselves to support a finding that all of the expenses contained therein were reasonable "agreed-upon" educational expenses. Cf. *Mandel* v. *Mandel*, 74 Mass. App. Ct. at 354 ("in the event of disagreement . . . each party would be responsible for fifty percent of the

cost of reasonable college expenses"). Based on our own review of these bills, it appears that some of these expenses may have nothing to do with the child's educational expenses, particularly payments for trips to Germany and Jamaica and purchases apparently made for his girlfriend. A remand and evidentiary hearing is required to resolve which of these expenditures are covered by the agreement. We express no opinion as to the final resolution of these expenses.

5. *Attorney's fees.* The agreement provides that the prevailing party is entitled to attorney's fees and costs. The trial court also has discretion to award attorney's fees pursuant to G. L. c. 208, § 38.

In the instant case, the probate judge awarded the mother $90,263.25 in fees. The judge considered various factors including "the ability of the [mother's] counsel, the work performed, the results secured, the time spent, the hourly rates, the existence of contemporaneous time records, the financial positions of the parties, and the [father's] obstructionist conduct which prolonged the proceedings." *Cooper* v. *Cooper*, 62 Mass. App. Ct. 130, 141 (2004), quoting from *Downey* v. *Downey*, 55 Mass. App. Ct. 812, 819 (2002). He found that the mother's counsel's hourly rates, unlike the father's, were "similar to rates charged by other attorneys in the Boston-Metro area in the practice area." The judge also compared the request for $90,263.25 favorably with the approximately $250,000 billed by the father's counsel.

All of these findings support an award of $90,263.25 pursuant to the agreement. Although the award of attorney's fees could not be based on a finding of contempt, the judge also relied on the agreement to support the award. As we conclude that the agreement alone is sufficient to uphold the award of attorney's fees, we affirm this part of the judgment. Cf. *Cooper* v. *Cooper, supra* at 143-144.

6. *Additional issues.* The father also objects to the judge's reliance on the mother's proposed findings of fact, his failure to address the father's own contempt action based on the mother's alleged failure to provide him with financial statements regarding the UTMA account, and the judge's decision not to allow the father's motion to amend his notice of appeal so that the

father might appeal the judge's denial of the father's motion for recusal. None of these contentions is meritorious.

Although "[w]e have criticized in the past wholesale adoption of findings proposed by one party to the litigation," we have nonetheless said that "even findings lifted wholesale from those a party proposes . . . 'will stand if supported by evidence.' " *Care & Protection of Olga*, 57 Mass. App. Ct. 821, 823-824 (2003), quoting from *First Pa. Mort. Trust* v. *Dorchester Sav. Bank*, 395 Mass. 614, 622 n.12 (1985). In this case, although the trial judge relied heavily on the mother's proposed findings, they are amply supported by the evidence.

As for the father's requested finding of contempt regarding the UTMA financial statements, the judge's findings that "Mother had duplicate statements relating to the college fund account sent to Father," and that the father never requested any statements, dispose of that claim.

Finally, it was within the judge's discretion to deny the father's fourth motion to amend, and regardless there was no merit to the recusal motion for the reasons stated by the single justice who previously considered this argument. Our own review of the evidentiary hearing transcript reveals a busy trial judge obviously frustrated by the father's counsel's obstructionist tactics, particularly the father's failure to appear at the first day of the evidentiary hearing and his failure to produce his $5 million financial statement until well into the second day of hearing. However, nothing the judge said or did would cause his impartiality reasonably to be questioned, and so it was not an abuse of discretion not to recuse himself. See *Fidelity Mgmt. & Research Co.* v. *Ostrander*, 40 Mass. App. Ct. 195, 202-203 (1996), and cases cited.

*Conclusion.* For the reasons stated above, we conclude that the father is contractually bound to pay his share of the college expenses of the child set out in the agreement. We determine, however, that the mother has not satisfied her higher burden to support a contempt judgment, and accordingly we reverse the portion of the judgment holding the father in contempt. The portion of the judgment awarding "other transportation, clothing, and living allowance" expenses is vacated, and the matter is remanded for further proceedings consistent with this opinion.

The judgment is otherwise affirmed. We also affirm the separate judgment awarding the mother attorney's fees and the order denying the father's motion to amend the notice of appeal.

*So ordered.*

BROWN, J. (concurring). Here, we again witness another puzzling situation in which the legal fees paid and awarded far exceed any amount that would be gained. Indeed, the father has acknowledged that the costs associated with defending the action might better have been spent on the child's college education. Litigation should be the last option, not the first. To that end, it is often beneficial to the parties, and counsel in advising their clients, to step back and take stock of what the case is about, what has gone on before, and what may lie ahead. In devising the judicial playbook, one should not forget the pocketbook. I suspect that not even an attorney with the skill of the legendary Patrick Hastings[1] would have undertaken this matter. In short, it is not brilliance that is required here — it is simply "arithmetic." Cf. W.I. Cowin, Reflections in Retirement, 55 Boston Bar J. 13, 14 (2011) ("technical competence" of lawyers to litigate is greater today than ever, but lawyers often "fail to consider whether doing it is useful").

---

[1]See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 111 (1977).