After a trial in the Probate and Family Court, the judge found Anthony Franchi, Jr. (husband), guilty of contempt for failing to pay to Michele Franchi (wife) court-ordered alimony, and a twenty-five per cent share of cash distributions allegedly received by him as a class B partner in four real estate limited liability partnerships (partnership entities).[2] The husband appeals, arguing that there was insufficient evidence showing that he received cash distributions from the partnership entities in excess of $ 13,714 for the tax years 2011 through 2015, and that the judge erred in failing to consider his ability to pay the $ 182,088.25 awarded to the wife. The husband also claims error in the finding that he committed fraud by claiming on his income tax returns the payment of alimony.[3] We agree that the evidence was insufficient to show that the husband received certain cash distributions, and therefore vacate the portion of the corrected judgment that awards the wife a twenty-five per cent share of most of the claimed distributions.
The parties were married in October, 1989. During most of the marriage, the husband was employed in the father's "businesses," A. Franchi Contractors, Inc. In addition to compensation from his father's businesses, the husband held interests in the partnership entities, of which he, his parents, and his siblings were partners.[4] The husband's father held the controlling partnership interest, and had the exclusive authority over distributions made from the net income of the partnership entities. The husband was terminated from his employment by his father in May, 2008, but maintained his class B partnership interests in the partnership entities. Throughout the marriage (until his termination) the husband regularly received annual cash distributions from each of the partnership entities.
The parties' judgment of divorce nisi (divorce judgment) entered on January 7, 2011. As part of the final marital property division, paragraph nine of the divorce judgment awarded the wife a twenty-five per cent share of the husband's interests in the partnership entities, up to a maximum of $ 365,000, "if and when" paid to the husband.[5] In addition, paragraph ten entitled the wife to twenty-five per cent of cash disbursements made to the husband by the partnership entities until such time as she received her maximum share of the property division. Paragraph ten also required the husband to "report to [the w]ife two times annually all cash distributions made to him."[6] Paragraph twenty required the husband to pay to the wife $ 400 in weekly alimony.
In February, 2016, the wife filed a contempt complaint (amended in September of 2016) alleging, among other things, that the husband had failed to pay her alimony, as well as her twenty-five per cent share of cash distributions received by him from the partnership entities between January, 2011, and September, 2016.
During the trial on the contempt complaint, the judge admitted the husband's individual Federal income tax returns for tax years 2011 through 2015. Each tax return and corresponding schedule K-1 reflected taxable income earned by the partnership entities and allocated to the husband by virtue of his class B partnership interest for Federal income tax purposes.[7] As the judge found, the income reported by the husband from the partnership entities for the tax years 2011 through 2015 totaled $ 728,353.[8]
The husband confirmed during his testimony that the earned income of the partnership entities, and the resulting tax liability derived therefrom, were as reported on the admitted income tax returns; however, he insisted that he received no distributions from the partnership entities other than the amounts given to him to pay his income tax liability based on his share of income earned by the partnership entities in a given tax year.[9] The judge noted that the husband consistently testified that between 2011 and 2015 he received "no monetary payment, income or distribution from any entity pursuant to the income reported per the Schedule K-1 forms." However, the husband conceded that the 2011 schedule K-1 issued by Glenside Realty Associates, LLP (Glenside), reflected, in box nineteen, a cash distribution to him in the amount of $ 13,714.
Personal checks issued to the husband by his parents also were admitted; the checks are dated between June, 2015, and December, 2016, totaling $ 149,891. Notations on the checks indicated that the funds were given to the husband for the parties' children's college expenses, for tax related expenses, or as "Gifts."
Ultimately, the husband was found guilty of contempt. He was ordered to pay to the wife, among other things, $ 90,400 in alimony arrears, and $ 182,088.25 as her twenty-five per cent share of what the judge deemed were cash distributions received by the husband from the partnership entities (totaling $ 728,353). The husband appealed.[10]
On appeal, the husband argues that the judge erred in finding that he received cash distributions from the partnership entities in excess of $ 13,714. He also claims error in the determination that he had the ability to pay to the wife $ 182,088.25.[11]
"To find a civil contempt, 'there must be a clear and undoubted disobedience of a clear and unequivocal command.... Where the order is ambiguous or the disobedience is doubtful, there cannot be a finding of contempt.' " Cooper v. Keto, 83 Mass. App. Ct. 798, 804 (2013), quoting Birchall, petitioner, 454 Mass. 837, 851-852 (2009). There was a "clear and unequivocal command" contained in the paragraphs of the divorce judgment applicable here -- nine, ten, eleven, and twenty. Id. Also clear, from box nineteen of the schedule K-1, is that $ 13,714 was distributed to the husband from Glenside in tax year 2011. The wife is therefore entitled to a twenty-five per cent share of that distribution as ordered by paragraph ten of the divorce judgment. However, the wife, as complainant, failed to meet her burden of proving that the husband received cash distributions from the partnership entities in excess of $ 13,714. See Birchall, petitioner, supra at 852, quoting Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of the Dep't of Mental Retardation (No. 1), 424 Mass. 430, 443 (1997) ("The burden of proof in a contempt action is on the complainant"). See also Smith v. Smith, 93 Mass. App. Ct. 361, 363 (2018), citing Wooters v. Wooters, 74 Mass. App. Ct. 839, 844 (2009).
There was insufficient evidence presented by the wife to show that the income attributed to the husband was actually received by him and, thus, constituted cash distributions from the partnership entities. See Halpern v. Rabb, 75 Mass. App. Ct. 331, 336 (2009) ("a reasonable person would not necessarily conclude that the phrase 'earnings ...' includes ... pass-through income that was reported on the father's tax returns, but not actually received or realized by him").
The partnership entities were formed as Massachusetts limited liability partnerships. As such, the partnership entities were not taxed at the partnership level. See 26 U.S.C. § 701 (2012). Instead, the income earned by the partnership entities passed through to the husband (on a pro rata basis) for income tax purposes; to determine his individual income tax owed on the pass-through income, the husband then accounted for "statutorily enumerated items, such as partnership income, gains, and losses that, in total, make up his ... 'distributive share of the partnership[ ].' " Adams v. Adams, 459 Mass. 361, 389 (2011), quoting 26 U.S.C. § 702(a) (2006). The earned income of the partnership entities was handled in this manner because "[u]nder the Internal Revenue Code, partnerships, such as [the partnership entities], are pass-through entities, and as such, individual partners are 'liable for income tax only in their separate or individual capacities.' " Id., quoting 26 U.S.C. § 701 (2001). Except for tax year 2011, there was no evidence that the husband received any of this pass-through income as cash distributions, and the judge's findings of any distributions in excess of $ 13,714 accordingly are unsupported by the evidence.[12]
In addition, there is no support in the record to support a conclusion that the checks received by the husband from his parents (totaling $ 149,891) represented cash distributions from the partnership entities, rather than reimbursements or gifts to the husband.[13] See Pierce v. Pierce, 455 Mass. 286, 293 (2009).
Based on the foregoing, we vacate so much of the corrected judgment as ordered payment to the wife of $ 182,088.25, and the judgment shall be modified to award the wife $ 3,428.50 (twenty-five per cent of $ 13,714). As so modified, the corrected judgment is affirmed.
So ordered.
Vacated in part; affirmed in part.

The husband was determined not guilty of contempt for failing to maintain health insurance for the wife.

The husband does not appeal from the portion of the corrected judgment relating to the nonpayment or arrearage of alimony, or the award of attorney's fees to the wife. Although he acknowledges the imposition of a suspended thirty-day jail sentence, he does not argue in his brief that it was improper.

The husband holds a twenty-five per cent interest in both Glen at Grove Realty Associates, LLP, and GMT Realty Associates, LLP; a fifteen per cent interest in Glenside Realty Associates, LLP; and a ten per cent interest in Walpole Street Realty Associates, LLP.

The divorce judge treated the husband's interests in the partnership entities as property rather than as income, explaining that there was "no guarantee that these assets will produce a stream of income, fixed or otherwise, or that [there] will be distributions to [the h]usband."

Paragraph eleven ordered the husband to provide the wife documentation to "substantiate income or assets distributed."

Each partnership entity issued a separate schedule K-1 to the husband each tax year reflecting his share (based on his percentage interest) of any profit, loss, or capital gain of the partnership entity, in addition to any claimed liabilities, interest income, and distributions made. See 26 U.S.C. § 702(a) (2012).

This amount included reported capital gain income in 2011; the husband reported no such income for the 2012 tax year.

The husband testified that each year his father would provide him with the precise amount necessary for payment to the Internal Revenue Service (IRS) of the tax liability owed on the husband's interests, or the husband's father would pay the amount owed directly to the IRS on the husband's behalf. The husband was responsible for the payment of any taxes owed on his own earned wages.

On October 10, 2017, the husband filed a motion to amend the judgment and a motion seeking relief from the judgment; both were denied. On the same day, he filed in the trial court a motion to stay the contempt judgment; according to this record, that motion had not been acted on at the time of briefing. The husband's motion to stay filed in this court was denied. None of these motions are part of this appeal.

The judge's finding of fraud by the husband is irrelevant to the contempt adjudication and, thus, we decline to address that portion of the husband's argument.

Although, as the wife asserts, the phrase "pass-through income" was not used to describe at trial the income attributed to the husband, there was ample evidence demonstrating that the partnership entities were a conduit through which their earned income "passed through" to the husband for income tax purposes. See Bernier v. Bernier, 449 Mass. 774, 782 (2007) (similarly, earned income of S corporation is " 'passed through' to the shareholders on a pro rata basis and taxed to the shareholders when earned by the corporation, whether or not the corporation pays dividends"). Despite the label given to the process, the wife nonetheless failed to meet her burden to prove at trial that the husband received cash distributions. See Birchall, petitioner, 454 Mass. at 852. The judge erred in finding otherwise. See J.S. v. C.C., 454 Mass. 652, 665 (2009) ("The record plainly reflects that the judge deemed, without giving any specific consideration to particular facts or circumstances, the father's entire income as measured for income tax purposes as available income for purposes of determining an appropriate child support order").

We note that the judge made no finding that those payments were distributions from the partnership entities, and the wife makes no argument on appeal that they were.